IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| TRAVIS SHANTEZ RICHMOND, | |
| Plaintiff, | CIVIL ACTION NO.: 2:24-cv-52 |
| v. | |
| FRANK BISIGNANO, Commissioner of Social Security, | |
| Defendant. | |

**O R D E R**

Plaintiff contests the decision of Administrative Law Judge Monica Flynn ("the ALJ" or "ALJ Flynn") denying his claim for Period of Disability and Disability Insurance Benefits. Plaintiff urges the Court to reverse the ALJ's decision. Doc. 13 at 18; Doc. 20 at 7. Defendant asserts the Commissioner's decision should be affirmed. Doc. 18. For the reasons that follow, the Court **AFFIRMS** the ALJ's decision. The Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

BACKGROUND

Plaintiff filed an application for a Period of Disability and Disability Insurance Benefits on March 11, 2022, alleging an onset date of October 15, 2017. R. 23.[1] On November 9, 2023, ALJ Flynn held a telephonic hearing, at which Plaintiff, who was represented by counsel, appeared and testified. Id. Patricia Scutt, a vocational expert ("VE"), also appeared at the

---

[1] A transcript of the entire proceedings before the Social Security Administration appears at Document Number 12. The transcript includes paginated Record cites. Docs. 12 to 12-1. The undersigned refers to the transcript using these same Record cites.

hearing.  On the record at the hearing, Plaintiff amended the alleged onset date of his disability to December 1, 2020.  Id.  ALJ Flynn denied Plaintiff's claim after the hearing in a decision on November 29, 2023.  R. 23–39.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

Plaintiff, born on May 4, 1985, was 35 years old at the time of the alleged onset date and 38 years old at the time of the ALJ's decision in 2023.  R. 38.  Plaintiff has at least a high school education.  Plaintiff previously worked as a signal support system specialist.  Id.

## DISCUSSION

### I.   The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

42 U.S.C. § 423(d)(2)(A).  Under the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability.  20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id.  If the claimant is not engaged in such activity, then the second inquiry is whether the

claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he can adjust other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff did not engage in substantial gainful activity since his alleged onset date, December 1, 2020. R. 25. At step two, ALJ Flynn determined Plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"); drug addiction and alcoholism; degenerative disc disease; and hypertension.

Id. At the third step, the ALJ determined Plaintiff's impairment or combination of impairments did not meet the severity of a listed impairment. R. 27.

The ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform medium work, except Plaintiff can frequently climb ramps and stairs. Plaintiff can occasionally climb ladders, ropes, and scaffolds. Plaintiff can frequently stoop, kneel, crouch, or crawl. Plaintiff can be exposed to vibration no more than frequently. Plaintiff can understand, remember, and carry out simple, routine instructions and tasks. Plaintiff can interact occasionally with supervisors and co-workers and never interact with the public. Plaintiff can use judgment to make simple work-related decisions. R. 29.

At the next step, the ALJ determined Plaintiff is unable to perform any past relevant work. The ALJ determined transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," regardless of whether Plaintiff has transferable job skills. R. 38. The ALJ concluded at the fifth and final step Plaintiff could perform jobs, such as lab washer, electrode cleaner, and circuit board layout taper, all of which exist in significant numbers in the national economy. R. 38–39.

## II.     Issues Presented

Plaintiff asserts the ALJ erred because substantial evidence does not support the ALJ's RFC determination. Plaintiff makes three arguments. First, Plaintiff states that the ALJ failed to properly evaluate the medical opinion of the State agency psychological consultant, Richard Luck, Ph.D. Second, Plaintiff states the ALJ also failed to properly evaluate the examining source opinion of the psychological consultative examiner, Scarlett Jett, Psy.D. Third, Plaintiff

states the ALJ failed to evaluate the treating source opinion related to Plaintiff's physical therapy at Harbour Rehabilitation.  Doc. 13.

**III.    Standard of Review**

It is well established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards.  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence.  Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved.  The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion.  Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007).  The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence.  Dyer, 395 F.3d at 1210.  In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards.  Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification.  Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct

legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), overruled by statute on other grounds recognized by Lane v. Astrue, No. 8:11-CV-345-T-27, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

IV.     **Substantial Evidence Supports the ALJ's Decision**

Plaintiff argues ALJ Flynn failed to properly evaluate the medical opinions of the State agency psychological consultant, Dr. Richard Luck, and the consultative psychologist, Dr. Scarlett Jett. Doc. 13 at 7, 12. Plaintiff argues the ALJ rejected parts of Dr. Luck and Dr. Jett's opinions but did not properly consider the supportability and consistency of each opinion. The Commissioner argues the ALJ properly evaluated both medical opinions. Doc. 18 at 7, 14.

A.     **Legal Standard**

An ALJ looking at medical opinions "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a); see Works v. Saul, No. 4:19-CV-1515, 2021 WL 690126, at *15, *24 (N.D. Ala. Feb. 23, 2021).[2] Instead, "'when evaluat[ing] the persuasiveness of medical opinions," the ALJ "will consider those medical opinions . . . using the factors listed . . . the most important factors . . . [being] supportability . . . and consistency." 20 C.F.R. § 416.920c. The controlling Regulation provides some guidance to ALJs on the "supportability" and "consistency" factors. 20 C.F.R. § 416.920c(c)(1)–(2). "Supportability" is a measure of how much a medical opinion is supported by objective medical evidence and explanations provided by the medical source giving the

---

[2]     On January 18, 2017, the Social Security Administration substantially revised the Regulations governing how the Commissioner considers medical evidence, including medical opinions. See 82 Fed. Reg. 5844 (Jan. 18, 2017); 82 Fed. Reg. 15,132 (Mar. 27, 2017). Those revisions apply to claims filed on or after March 27, 2017, and are, therefore, applicable in this case. Compare 20 C.F.R. § 416.920c (applicable to claims filed on or after on or after March 27, 2017), with 20 C.F.R. § 416.927 (applicable to claims filed before March 27, 2017).

opinion.  See 20 C.F.R. § 416.920c(c)(1).  "Consistency" is a measure of how consistent the medical opinion is with evidence from other sources (medical and nonmedical).  See 20 C.F.R. § 416.920c(c)(2).  Opinions that have a high degree of "supportability" and "consistency" should be treated as more persuasive.  20 C.F.R. § 416.920c(c)(1)–(2).

The ALJ must articulate how supportability and consistency "were considered for a medical sources opinion, but an ALJ is not required to articulate consideration of the remaining factors."  Anthony v. Kijakazi, CV 120-110, 2021 WL 4304725, at *3 (S.D. Ga. Sept. 3, 2021) (citing 20 C.F.R. §416.920c(b)(2); Uresi v. Comm'r of Soc. Sec., No. 2:20-CV-367, 2021 WL 2644549, at *4 (M.D. Fla. June 28, 2021)).  However, if the ALJ finds two or more medical opinions "about the same issues are both equally well-supported and consistent with the record, but are not exactly the same," the ALJ will articulate how he considered the other most persuasive factors for those medical opinions.  20 C.F.R. § 416.920c(b)(3).  The ALJ must "provide sufficient detail concerning the degree to which he finds a medical source's opinion persuasive so that a reviewing court may understand the ALJ's analysis."  Works, 2021 WL 690126, at *15 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011)); see Jackson v. Soc. Sec. Admin., Comm'r, 779 F. App'x 681, 684 (11th Cir. 2019).  As with all conclusions, the ALJ's conclusions regarding medical source opinions must be supported by substantial evidence in the record.  Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1320 (11th Cir. 2021) (citing Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004)).[3]

---

[3]  In revising the Regulations to remove the treating source rule, the Social Security Administration explained, "[U]nder the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether *substantial evidence* supports our final decision[.]"  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (emphasis added).  Accordingly, nothing in the revised Regulations alters the requirement the ALJ's decisions be supported by substantial evidence.

### B.  Dr. Luck's Opinion

Dr. Luck, a State agency psychological consultant, assessed Plaintiff's mental RFC on March 14, 2023.  R. 101–03.  Dr. Luck opined:

> [Plaintiff's] ability to understand and remember complex or detailed instructions is limited[;] however, he would be expected to understand and remember simple, one and two-step instructions . . . .  [Plaintiff] has the ability to maintain attention and perform at a[] consistent pace on simple tasks for 3.5 [hour] period with normal and without normal interruption from psychological based symptoms but would have occasional [difficulty with] some detailed tasks[.]  [Plaintiff] would be able to do so under ordinary supervision and also would be able to make simple and detailed work related decisions.  Additionally, [Plaintiff] would be able to maintain regular attendance and punctuality . . . .  [Plaintiff] is capable of relating appropriately on a casual basis with the public but contact should be limited in order to reduce stress.  [Plaintiff] is able to accept directions and criticism from supervisors and able to relate appropriately to co-workers without unduly distracting them or exhibiting behavioral extremes.  Additionally[,] [Plaintiff] is capable of asking simple and details [questions] and making [requests] for assistance.

R. 102–03.

The ALJ found Dr. Luck's opinion to be "somewhat persuasive."  R. 36.  The ALJ remarked:

> Dr. Luck did not provide much support for his findings; however, a limitation to simple, routine work with simple work-related decisions is fairly consistent with the evidence as a whole.  [Plaintiff] has had limited conservative mental health treatment.  Consultative exams have shown normal cognitive function and appropriate social skills and appearance.  Treatment notes also show many normal findings, and [Plaintiff] has been able to perform activities such as going out alone, spending time with others, mowing the lawn, using the microwave, cleaning, shopping, driving, and managing money.  However, I do not specifically limit [Plaintiff] to maintaining attention and a consistent pace for 3.5-hour periods, as that limitation is not well[]explained.  Additionally, when I limit [Plaintiff] to simple, routine tasks, I am not adopting a further restriction to 1-2 step task/instructions.  Simple, routine tasks are consistent with unskilled work and may involve more than 1-2 step tasks/instructions and still be simple and routine.  Finally, given [Plaintiff's] significant complaints regarding interacting with others as well as his emotional reactivity, I find that he is more limited in social interactions (e.g., that he can have no public interaction) than Dr. Luck determined.  Overall, Dr. Luck's assessment is only somewhat persuasive.

Id. (citations to the record omitted).

Plaintiff argues the ALJ rejected parts of Dr. Luck's opinion but the ALJ's rationale was not supported. Doc. 13 at 7. Plaintiff states the ALJ rejected Dr. Luck's opinion that Plaintiff was limited to one- and two-step instructions because unskilled work may involve more than one- and two-step instructions and still be simple and routine. Plaintiff argues the ALJ's reasoning had nothing to do with supportability or consistency of Dr. Luck's opinion. Plaintiff contends Dr. Luck's opinion was consistent with the record. Id. at 9. Plaintiff argues the ALJ's error was harmful because Dr. Luck's limitation would have limited Plaintiff to jobs with a reasoning level of 1 at step five. This would have limited Plaintiff's available jobs, affecting the ALJ's determination of whether Plaintiff was able to perform a significant number of jobs in the national economy. Id. at 10–12.

The Commissioner argues the ALJ properly evaluated Dr. Luck's prior administrative medical findings. Doc. 18 at 7. The Commissioner states that the ALJ found Dr. Luck's medical findings "somewhat persuasive" and addressed the supportability and consistency factors. The Commissioner argues Dr. Luck never examined Plaintiff and, therefore, there are no findings Dr. Luck made that the ALJ could use to establish supportability. Id. at 9. The Commissioner states the ALJ considered the explanation Dr. Luck provided and notes that Dr. Luck did not provide much support for his findings. The Commissioner argues this is sufficient to satisfy the supportability element. The Commissioner also argues that the ALJ specifically stated that a limitation to simple, routine work with simple work-related decisions was fairly consistent with the evidence as a whole. Id. at 10. The Commissioner contends the Regulations require only source-level articulation and do not require the ALJ to address every limitation identified by a medical source. Id. at 11.

The ALJ appropriately discussed the consistency of Dr. Luck's opinion with other objective medical evidence in the record. In particular, the ALJ cited Plaintiff's conservative mental health treatment and consultative examinations, which showed normal cognitive function and appropriate social skills and appearance. R. 36, 830–31, 838–39. The ALJ also cited treatment notes showing normal mental status findings. R. 36, 470–71, 474–76, 869–71, 877–79. The ALJ also noted Plaintiff's subjective complaints and daily activities. R. 36, 253–60, 831, 835–36. Thus, the ALJ adequately addressed the consistency factor.[4]

Even though the ALJ did not expressly use the term "supportability," it is clear that the ALJ considered whether Dr. Luck's opinion was supported by objective medical evidence and explanations that Dr. Luck provided. Supportability, as that term is used in 20 C.F.R. § 416.920c, refers to how much a medical opinion is supported by objective medical evidence and explanations provided by the medical source giving the opinion. In discussing Dr. Luck's opinion, the ALJ stated, "Dr. Luck did not provide much support for his findings." R. 36. Additionally, as a State agency psychological consultant, Dr. Luck completed the medical portion of the case review and any applicable RFC assessment about all mental impairments in the claim. 20 C.F.R. § 416.1016(c). Dr. Luck did not examine Plaintiff and had no additional findings to establish supportability. The ALJ adequately articulated her consideration of the supportability factor for Dr. Luck's opinion.

Substantial evidence supports the ALJ's conclusions. As the ALJ noted, Plaintiff's consultative exams and treatment notes show many normal findings and normal cognitive function. R. 830–31, 838–39, 470–71, 474–76, 869–71, 877–79. The ALJ stated Plaintiff had

---

[4] Plaintiff cites to Lawrence v. Kijakazi, No. 2:20-CV-67, 2022 WL 421139, at *4 (S.D. Ga. Jan. 24, 2022), report and recommendation adopted, 2022 WL 417767 (S.D. Ga. Feb. 10, 2022), but that case is distinguishable. In Lawrence, the ALJ's consideration of the supportability factor was less thorough and the ALJ completely failed to address the consistency factor.

limited conservative mental health treatment. The ALJ also accounted for Plaintiff's reported daily activities of going out alone, spending time with others, mowing the lawn, using the microwave, cleaning, shopping, driving, and managing money. The ALJ also noted Plaintiff's subjective complaints regarding social interactions. R. 253–60. This evidence is consistent with Dr. Luck's opinion that Plaintiff has moderate mental limitations and could perform simple, routine work. Thus, substantial evidence supports the ALJ's decision to find Dr. Luck's opinion only somewhat persuasive.

Plaintiff argues the ALJ's reason for excluding certain limitations were not supported by supportability or consistency. However, the ALJ was not required to include or expressly exclude the specific limitation findings. See 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually."). The ALJ explained Dr. Luck did not provide much support for his findings and found some of the findings were not well explained. Therefore, the ALJ appropriately articulated why he discounted Dr. Luck's opinion. See Raper v. Comm'r of Soc. Sec., 89 F.4th 1261, 1275 (11th Cir. 2024) ("The ALJ's stated reason for discounting the November 4, 2015[] medical opinion—that it was inconsistent with the medical records—was adequate and amounts to good cause.").

Finding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC. The RFC is "a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive." Beegle v. Soc. Sec. Admin., Comm'r, 482 F. App'x 483, 486 (11th Cir. 2012). The ALJ is under "no obligation to adopt verbatim all of [the doctor's] limitations into the RFC." Nichols v. Kijakazi, No. 3:20-cv-00224, 2021 WL 4476658, at *8 (M.D. Ala. Sept. 29, 2021). According to the Regulations, the

ALJ cannot defer or give any specific evidentiary weight to any medical opinion. 20 C.F.R. § 416.920c(a). Instead, the ALJ is to examine the persuasiveness of medical opinions and formulate an RFC that is supported by substantial evidence. Plaintiff does not point to any error in how the ALJ addressed Dr. Luck's opinions. The error described is only in the ALJ's subsequent RFC determination, which was less restrictive than Plaintiff believes the ALJ's analysis required.

### C.     Dr. Jett's Opinion

Dr. Jett, a consultative psychologist, evaluated Plaintiff in September 2022. R. 827–33. Dr. Jett opined:

> [Plaintiff] exhibits no limitations in understanding, remembering, and applying simple or complex directions and instructions. Using reason and judgment to make work-related decisions is not an area of limitation for [Plaintiff]. Interacting adequately with supervisors, coworkers, and the public is a moderate limitation for [Plaintiff]. Sustaining concentration and performing a task at a consistent pace is not an area of limitation for [Plaintiff]. Sustaining an ordinary routine and regular attendance at work is not an area of limitation for [Plaintiff]. Regulating emotions, controlling behavior, and maintaining well-being is a moderate limitation for [Plaintiff]. Maintaining personal hygiene and appropriate attire is not an area of limitation for [Plaintiff]. Awareness of normal hazards and taking appropriate precautions is not an area of limitation for [Plaintiff].

R. 832.

The ALJ found Dr. Jett's opinion partially persuasive. R. 37. The ALJ stated:

> Dr. Jett's assessment is supported by her exam of [Plaintiff], which showed no significant abnormalities except for flat affect and fair to poor insight and judgment. Additionally, moderate limitations in interacting with others is consistent with the evidence as a whole. Despite [Plaintiff's] complaints, for example, he has had limited, conservative treatment for his mental impairments and went a lengthy period of time without treatment between mid-2021 and late 2022. He also spends time with others and has been cooperative and appropriate with his treating sources. However, Dr. Jett's assessment regarding understanding, remembering, and applying information and using judgment do not adequately consider [Plaintiff's] subjective complaints, which suggest he cannot understand, remember, or apply complex directions or use judgment to make complex work-related decisions. Furthermore, her opinions regarding [Plaintiff's] ability to regulate emotions, control behavior, and maintain well-

12

>being are not entirely consistent with the evidence as a whole.  For example, at the time of Dr. Jett's exam, [Plaintiff] had had no psychiatric hospitalization and no current mental health treatment, including no use of psychotropic medication, suggesting better abilities to regulate emotions, control behavior, and maintain well-being.  Additionally, when [Plaintiff] returned to treatment in late 2022, his treatment remained conservative.  Therefore, Dr. Jett's assessment is only partially persuasive.

Id. (citations to the record omitted).

Plaintiff argues the ALJ failed to properly evaluate the psychological consultative examiner, Dr. Jett's, opinion.  Doc. 13 at 12.  Plaintiff argues the ALJ found Dr. Jett's opinion partially persuasive but the ALJ's reasoning was not supported.  Plaintiff argues the ALJ failed to provide an adequate explanation as to why some moderate limitations were supported while others were not.  Specifically, Plaintiff takes issue with the ALJ's determination that Dr. Jett's opinion regarding Plaintiff's moderate limitations in his ability to regulate emotions, control behavior, and maintain well-being was not consistent with the treatment record.  Id. at 13.  Plaintiff argues the ALJ's error was harmful because Dr. Jett's assessed limitations were not included in the ALJ's final RFC determination or in the hypotheticals posed to the VE.  Id. at 14.

The Commissioner argues the ALJ properly evaluated the persuasiveness of Dr. Jett's opinion under the revised Regulations by articulating consideration of the supportability and consistency factors and finding the opinion only "somewhat persuasive."  Doc. 18 at 14.  For supportability, the Commissioner argues that the ALJ stated Dr. Jett's opinion was supported by her examination of Plaintiff.  For consistency, the Commissioner points out the ALJ noted that Dr. Jett's opinion regarding Plaintiff's moderate limitations in interacting with others was consistent with the evidence as a whole.  The Commissioner argues that the ALJ's determination regarding inconsistent moderate limitations was supported by the ALJ's discussion of Plaintiff's psychiatric hospitalizations and lack of mental health treatment or use of psychotropic

13

medications.  Id. at 15.  The Commissioner argues the ALJ's discussion of evidence of record that was inconsistent with Dr. Jett's opinion sufficiently met the consistency factor.  Id. at 16.

The ALJ appropriately discussed the consistency of Dr. Jett's opinion with other objective medical evidence in the record.  In particular, the ALJ noted Plaintiff's limited, conservative treatment for his mental impairments.  The ALJ also noted Plaintiff went a lengthy period of time without treatment between 2021 and 2022.  Additionally, the ALJ noted Plaintiff spends time with others and has been cooperative and appropriate with his treating sources.  R. 444, 470–71, 827–33, 869–71.

The ALJ appropriately discussed the supportability of Dr. Jett's opinion.  The ALJ noted Dr. Jett's opinion was supported by her examination of Plaintiff.  R. 37.  The ALJ noted Dr. Jett's examination showed no significant abnormalities except for flat affect and fair to poor insight and judgment.

Substantial evidence supports the ALJ's conclusions on supportability and consistency.  As explained above, the record establishes a history of conservative treatment for Plaintiff's medical impairments.  Plaintiff's mental health records show that he was not receiving any mental health services or taking any pharmaceuticals as of July 21, 2022.  R. 917.  The records also show Plaintiff's last visit for PTSD treatment was January 12, 2021.  Id.  Plaintiff's records show he was last prescribed anxiety medication by his mental health provider in 2021.  R. 891.  This supports the ALJ's conclusion that Dr. Jett's opinion regarding Plaintiff's ability to regulate emotions, control behavior, and maintain well-being is not consistent with the record.  Thus, substantial evidence support the ALJ's decision to find Dr. Jett's opinion partially persuasive.

Plaintiff argues the ALJ failed to adequately explain why some of Dr. Jett's prescribed limitations were not supported.  However, the ALJ was not required to include or expressly

exclude the specific limitation findings.  See 20 C.F.R. § 404.1520c(b)(1) ("We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.").  The ALJ explained Dr. Jett's moderate limitations to Plaintiff's ability to regulate emotions were inconsistent with Plaintiff's medical history and mental health records.  Therefore, the ALJ appropriately articulated why she discounted Dr. Jett's opinion.  See Raper, 89 F.4th at 1275 ("The ALJ's stated reason for discounting the November 4, 2015[] medical opinion—that it was inconsistent with the medical records—was adequate and amounts to good cause.").

Finding a medical opinion persuasive does not require the ALJ to fully incorporate that opinion into the RFC.  The RFC is "a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."  Beegle, 482 F. App'x at 486.  The ALJ is under "no obligation to adopt verbatim all of [the doctor's] limitations into the RFC."  Nichols v. Kijakazi, No. 3:20-cv-00224, 2021 WL 4476658, at *8 (M.D. Ala. Sept. 29, 2021).  According to the Regulations, the ALJ cannot defer or give any specific evidentiary weight to any medical opinion.  20 C.F.R. § 416.920c(a).  Instead, the ALJ is to examine the persuasiveness of medical opinions and formulate an RFC that is supported by substantial evidence.  Plaintiff does not point to any error in how the ALJ addressed Dr. Jett's opinions.  The error described is only in the ALJ's subsequent RFC determination, which was less restrictive than Plaintiff believes the ALJ's analysis required.

**VI.   The ALJ Did Not Err in Evaluating Plaintiff's Physical Therapy Records**

Plaintiff argues that the ALJ failed to evaluate or discuss the medical opinion of Plaintiff's treatment provider at Harbour Rehabilitation.  Doc. 13 at 15.  Plaintiff argues that the ALJ was required to evaluate Plaintiff's treatment provider's opinion because it pertained to Plaintiff's impaired ability to lift, carry, and grasp objects.  Id. at 16.  Plaintiff contends that

15

although this opinion was from April 2018, the ALJ evaluated other opinions from 2017 and 2018, as well.  Id. at 17.  Plaintiff argues the ALJ's error was harmful because this opinion was not included in the ALJ's final RFC determination or in the hypotheticals posed to the VE.  Id.  Plaintiff contends this opinion would have precluded Plaintiff from the jobs available to him in the national economy.  Id.

The Commissioner argues the physical therapy note from Harbour Rehabilitation does not meet the definition of a medical opinion under the Regulations.  Doc. 18 at 17–18.  The Commissioner argues that Plaintiff does not elaborate on what types of limitations this medical opinion supports and provides no reference to any other evidence supporting a finding of any such limitation.  The Commissioner argues that the physical therapy note is from April 2018, which is two years and seven months before the relevant disability period beginning on December 1, 2020.  The Commissioner contends the ALJ's decision shows that she did not believe any opinion in the April 2018 physical therapy note reflected Plaintiff's condition during the relevant disability period.  Id. at 18.  The Commissioner argues the ALJ's decision also included findings that contradicted any limitation in grasping.  Id. at 19.  The Commissioner argues the ALJ also provided additional context regarding Plaintiff's physical therapy and chiropractic treatment in her decision.  Alternatively, the Commissioner argues that the ALJ's omission of this evaluation is harmless because it would not alter the ALJ's findings.[5]  Id. at 20–21.

In the ALJ's analysis, the ALJ discusses Plaintiff's treatment for his physical impairments.  R. 31.  The ALJ stated, "In 2016–2018, [Plaintiff] underwent physical therapy and

---

[5]   Notably, Plaintiff filed a brief addressing the Commissioner's arguments on the first two issues but did not address the third issue at all.  Doc. 20.  Indeed, there is no mention of the Harbour Rehabilitation records or physical therapy in Plaintiff's final brief.  Therefore, it may be that Plaintiff no longer asserts this challenge.  Regardless, the challenge fails.

chiropractic treatment for his back and neck.  There is no evidence of such treatment since the amended alleged onset date, nor is there evidence of more intensive treatment such as injections or ongoing pain management."  Id.  The ALJ cites to records from Wardell Orthopaedics, Harbour Rehabilitation, and Lemmata Chiropractic as support.  R. 318–433.

Plaintiff has not shown that the ALJ committed any error regarding her evaluation of the Harbour Rehabilitation records.  First, Plaintiff has not shown that the Harbour Rehabilitation records contain any "medical opinion" (as that term is used in the Regulations) that the ALJ was required to consider.  Additionally, these records were from long before the amended onset date, and there is no requirement for an ALJ to consider medical records prior to the disability period.  The Eleventh Circuit Court of Appeals has held that an ALJ is not required to consider medical records predating the plaintiff's disability onset date.  See Arrington v. Soc. Sec. Admin., 358 F. App'x 89, 94 (11th Cir. 2009) (determining plaintiff showed no error in the ALJ's failure to consider reports predating the disability onset date).  The relevant disability onset date is December 1, 2020.  Plaintiff's physical therapy records predate Plaintiff's disability onset.  The ALJ's analysis shows there is no evidence Plaintiff received ongoing treatment for these impairments at the time of his onset date.  Plaintiff has also failed to show that consideration of the Harbour Rehabilitation records would have had any impact on the ALJ's determinations in this case.  Ultimately, Plaintiff has not shown that the ALJ committed any error in her consideration of the Harbour Rehabilitation records.

**CONCLUSION**

Based on the foregoing, the Court **AFFIRMS** the ALJ's decision.  Further, the Court **DIRECTS** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**SO ORDERED**, this 16th day of September, 2025.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA